# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DAVID CAVIN,  )<br>  )<br>     Plaintiff,  )<br>  )<br>  vs.  )<br>  )<br>SOCIAL SECURITY  )<br>ADMINISTRATION, *Commissioner*,  )<br>  )<br>     Defendant.  ) | Case No. 4:15-cv-02125-TMP |

## MEMORANDUM OPINION

### I.   Introduction

The plaintiff, David Cavin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB").  Mr. Cavin timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 10).

The plaintiff was 39 years old on the date of the onset of his alleged disability, and 41 years old on the date of the ALJ's opinion, having been born in December 1972. (Tr. at 43). His past work experience includes employment as a welding machine operator, loader/unloader, appliance assembler on a line, and a construction worker/laborer. (Tr. at 20). The plaintiff claims that he became disabled on January 3, 2012, due to diabetic peripheral neuropathy in both hands, carpal tunnel syndrome in both hands, diabetes, diabetes-related restless leg syndrome, diabetic seizures with liver damage, shoulder pain, difficulty using his hands, and anxiety disorder. (Tr. at 10, 198).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id*. If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical

evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or

she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. at 12). She further determined that the plaintiff engaged in substantial gainful activity until September 5, 2012. (*Id.*) However, the ALJ determined that there was a continuous 12-month period, from September 5, 2012 to the date of the decision, during which the plaintiff did not engage in substantial gainful activity. (*Id.*) According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: bilateral carpal tunnel syndrome, status post right and left carpal tunnel release, diabetes mellitus, diabetic neuropathy, lumbar degenerative disc disease, and restless leg syndrome. (*Id.*) She also determined that the plaintiff's obesity, right shoulder pain and difficulty raising his right arm, anxiety disorder, and depression are non-severe. (Tr. at 13). The ALJ found that, according to the

medical records, the plaintiff's alleged diabetic seizures and liver damage affecting his brain could not be medically determined based on the absence of objective documentation regarding any such issues.[1]  (*Id.*)  The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 14).  The ALJ did not find the plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms to be entirely credible, and she determined that the plaintiff "has the residual functional capacity to perform work at a light level of exertion as that term is defined in the Regulations.  He can occasionally push/pull with the bilateral upper extremities and occasionally handle or finger bilaterally.  He should not engage in repetitive motion with the bilateral upper extremities, and he should not have exposure to hazards."  (Tr. at 15-16).

According to the ALJ, the plaintiff is unable to perform any of his past relevant work as a welding-machine operator and construction laborer, he is a "younger individual," and he has "at least a high school education," as those

---

[1]  The only apparent medical evidence on this issue comes from the records of the plaintiff's admission to Redmond Regional Medical Center in April 2014, following a seizure.  Although the plaintiff asserts that the seizure was caused by diabetic damage to his liver, resulting in some effect on his brain, the discharge summary from the hospital states clearly the medical assessment that the seizure was the result of the plaintiff's abrupt cessation of the medication Xanax.  (Tr. at 446).  The discharge summary goes further to say that the plaintiff "is not actually encephalopathic."

terms are defined by the regulations. (Tr. at 20). She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Even though the plaintiff cannot perform the full range of light work, the ALJ determined that there are a significant number of jobs in the national economy that he is capable of performing, such as bakery worker on a line or control area checker. (Tr. at 21). The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 3, 2012, through the date of this decision." (*Id.*)

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.

*See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead,

opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

### III.  Discussion

The plaintiff argues that the ALJ's determination that he has the RFC to perform jobs requiring "any use of his hands" is not supported by substantial evidence because, "the claimant cannot even occasionally handle or finger bilaterally." (Doc. 13, p. 14). To support his argument, the plaintiff contends that the ALJ erred in giving great weight to the opinion of the plaintiff's treating physician, Dr. Kirschberg, rather than the opinion of consulting physician Dr. Born, whose evaluation was done almost a year later and who concluded that the

plaintiff could no longer "work at manual labor anymore involving his hands." (Tr. at 18). The plaintiff contends that, had Dr. Born's opinion been given great weight, the ALJ would have found that the plaintiff met the requirements of Listing 11.14,[2] could not use his hands at all to work and, therefore, could not do the job of bakery worker or control area checker—the jobs identified by the vocational expert ("VE") as being within the plaintiff's RFC.

### A. *The Evaluations of Dr. Kirschberg and Dr. Born*

The ALJ addressed the plaintiff's history of carpal tunnel syndrome and neuropathy in the hands, as well as the opinions of Dr. Kirschberg and Dr. Born in her discussion of the plaintiff's RFC. She noted that the plaintiff's primary care

---

[2] Social Security Disability Listing 11.14 states that "Peripheral neuropathy" can be disabling under the following circumstances:

**11.14 Peripheral neuropathy**, characterized by A or B:

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

OR

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:

   1. Understanding, remembering, or applying information (see 1.00G3b(i)); or

   2. Interacting with others (see 11.00G3b(ii)); or

   3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

   4. Adapting or managing oneself (see 11.00G3b(iv)).

physician, Dr. Lau, first diagnosed the plaintiff's carpal tunnel syndrome and neuropathy in December 2011 after the plaintiff complained of numbness and lack of grip strength in his right hand. (Tr. at 16). The plaintiff was seen at Northeast Orthopedic Clinic in November 2011, and an Electromyography ("EMG") procedure confirmed bilateral carpal tunnel syndrome and early peripheral neuropathy. (*Id.*) He underwent a right carpal tunnel release on January 4, 2012, and a left carpal tunnel release on January 25, 2012. (Tr. at 17). The surgeries were performed by Dr. Daniel O. Ryan. (*Id.*)

The plaintiff began seeing Dr. Kirschberg in September 2012, concerning which the ALJ found the following:

> Dr. Kirschberg noted that the claimant was fairly asymptomatic when he rested but became numb and tingly when he used his hands. He reported that the claimant did not have enough strength to perform his past job and he should be kept at light duty and undergo reconditioning. [O]n October 10, 2012, the claimant completed the ninth of twelve physical therapy visits prescribed by Dr. Kirschberg (Exhibit 4F), but subsequently reported to Dr. Kirschberg that therapy did not help. On October 26, 2012, Dr. Kirschberg returned the claimant to work with a 20-pound weight limit per hand and no more than 20 repetitive motion movements per minute. In November 2012, a sensory examination showed glove-stocking sensory loss to all modalities of the claimant's mid forearm and foreleg bilaterally, and Dr. Kirschberg noted that the results of an EMG were essentially the same as EMG results pre-surgery. . . . Dr. Kirschberg found that the claimant was at Maximum Medical Improvement and could return to work immediately in the medium category of work with restrictions.

(Tr. at 17).

The ALJ then addressed Dr. Born's 2013 examination of the plaintiff, noting that:

> In June 2013, the claimant underwent a consultative examination for the State agency (Exhibit 7F).  He reported that carpal tunnel release surgeries had made his problems worse and he had ongoing pain and numbness in both hands and wrists.  The claimant also reported a three-to-four year history of restless leg syndrome and a ten-year history of insulin-dependent diabetes mellitus. . . .  Dr. Born noted pain and tenderness in the claimant's wrists, hands, and fingers, but a good range of motion in his elbows, wrists, hands, and finger joints.  His impression was bilateral carpal tunnel syndrome, insulin-dependent diabetes mellitus, and restless leg syndrome.  In his opinion, the claimant would "not be able to work at manual labor anymore involving his hands."

(Tr. at 17-18).

Dr. Born wrote his report on the plaintiff's condition on June 26, 2013.  He discussed the plaintiff's history and post-surgical pain, noting that "the patient states these [carpal tunnel] operations made his problems worse.  He has had pain at both wrists.  He has had numbness and tingling and with usage, his pain worsened."  (Tr. at 437).  The plaintiff also reported to Dr. Born that even after he stopped working "he is left with ongoing pain and numbness in both hands and

wrists," and that "if he uses his hands, his symptoms get worse." (*Id.*) The plaintiff stated that he was unable to drive more than four or five miles without having to "stop and shake his hands." (*Id.*) In Dr. Born's evaluation of the plaintiff's upper extremities he discussed the plaintiff's muscle tone and deep tendon reflexes, but did not evaluate the plaintiff's grip strength. Dr. Born simply noted that the plaintiff "complains subjectively of tingling and pain in the fingers of both hands," and that the plaintiff was able to "oppose the thumb to the other fingers sequentially." (Tr. at 438). He also noted that the plaintiff had "good range of motion" in his wrists, hands, and fingers, and that the plaintiff has tenderness at the site of his surgical scars and generally in the wrists. (Tr. at 439). Dr. Born concluded his findings by stating that it "appear[s] that [the plaintiff] will not be able to work at manual labor anymore involving his hands," and opined that the plaintiff's symptoms "most likely will not improve." (*Id.*)

The ALJ ultimately determined that the opinion of Dr. Kirschberg was entitled to great weight, while Dr. Born's opinion was due to be given little weight. She explained her decision as follows:

> As for opinion evidence, the undersigned gives great weight to the opinion of Dr. Kirschberg (Exhibit 5F). He is a treating physician and a specialist in neurology, and his opinion is consistent with the contemporaneous medical evidence. The undersigned has limited the claimant to light work with additional limitations in pushing and

pulling, rather than the medium level of exertion reported by Dr. Kirschberg, to accommodate the effects of the plaintiff's additional impairments, including a recent shoulder impairment.  The undersigned imposed handling, fingering, and repetitive-motion limitations consistent with Dr. Kirschberg's opinion but also prohibited exposure to hazards, due primarily to the claimant's diabetes-related symptoms.

The undersigned gives little weight to the opinion of Dr. Born, the consultative examiner (Exhibit 7F).  His statement, that the claimant would not be able to work at manual labor involving his hands, is nonspecific and it addresses an issue that is reserved to the Commissioner of Social Security.  Therefore, this statement is not entitled to any special significance due to its source (20 CFR 404.1527(e)).  The claimant's ability to perform a task physically is only part of the analysis that is before the undersigned.  Additional factors, including vocational factors, also apply; and, due to these additional factors, Dr. Born's opinion is given little weight.

(Tr. at 19).

While Dr. Born could have described with more specificity what the plaintiff was able to do with his hands and how that may affect the plaintiff's ability to work, vagueness alone is not sufficient reason to disregard Dr. Born's evaluation.  Although the opinion of a treating physician is entitled to great weight, an ALJ may give "less weight to the opinion of a treating physician" if good cause is shown. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997), citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Such good cause has been found "where the evidence supported a contrary finding."  *Id*. citing *Schnorr v. Bowen*, 816 F.2d 578,

582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987).  Dr. Kirschberg's opinion is not binding on the ALJ simply because it was the opinion of a treating physician.[3]  Dr. Born's opinion as a one-time examiner, on the other hand, is not entitled to deference.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987), citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  That does not mean, however, that his opinion may be disregarded out of hand.

The ALJ dismissed Dr. Born's opinion as "nonspecific," and the opinion that the plaintiff could no longer do manual labor with his hands was an opinion left to the Commissioner.  (Tr. at 19).  Due to the inquisitorial nature of Social Security proceedings, an ALJ may need to re-contact a medical source to fully develop the record.  An ALJ is not required to re-contact medical sources when there is already substantial evidence on record to support a decision.  *See* 20 C.F.R. § 404.1512(e); *Robinson v. Astrue*, 365 Fed. App'x 993, 999 (11th Cir. 2010).  However, as part of her general obligation to develop the record, in the case of ambiguity an ALJ may have a responsibility to expand the record in order to clarify the ambiguity.  *See Ingram v. Commissioner*, 496 F.3d 1253, 1269 (11th Cir. 2007).

In the instant case, the ALJ did not reach out to Dr. Born for clarification of his medical opinion, nor did she reach out to Dr. Kirschberg for his opinion on how

---

[3]  As the court does not reweigh evidence, this should not be construed as an opinion on the weight the ALJ should have assigned to Dr. Kirschberg's opinion.

the plaintiff's condition may have progressed. The ALJ's opinion was entered on February 5, 2015, almost two years after Dr. Born's evaluation of the plaintiff and more than three years removed from Dr. Kirschberg's latest notes. Although Dr. Kirschberg was a treating physician and Dr. Born was not, it is conceivable that Dr. Born's more recent evaluation could prove more useful to the ALJ's determination.[4] This is especially true considering that the plaintiff testified at his hearing before the ALJ that the neuropathy in his hands had gotten worse since the time of these evaluations. (Tr. at 36). Based on the evidence in the record, and the ALJ's own statement that Dr. Born's evaluation was "non-specific," the court finds that the record was not sufficiently established to allow the ALJ to make a finding of fact as to the plaintiff's RFC.

The plaintiff also argues that, had the ALJ properly expanded the record or given greater weight to Dr. Born's opinion, she would have found that the plaintiff either meets the requirements for Listing 11.14[5] or is unable to do any work with his

---

[4] The ALJ determined that the plaintiff "acquired sufficient quarters of coverage to remain insured through December 31, 2017." Accordingly, even if the plaintiff's disability onset date was judged to be wrong, a later onset date would not preclude the plaintiff from being eligible for DIB.

[5] Full consideration of the standards delineated in Listing 11.14 is particularly important. A claimant can be disabled by peripheral neuropathy *either* because the neuropathy cause "extreme limitation" in the "use of upper extremities," *or* due to the combination of "marked limitation" in physical functioning and in "[c]oncentrating, persisting, or maintaining pace." In light of the plaintiff's testimony that his diabetes requires him to urinate 15 to 20 times a day, it is possible that he has a "marked limitation" in both the physical functioning of his hands due to neuropathy

hands and, therefore, is unable to do the jobs of bakery worker or control area checker—or any other job that exists in significant numbers in the national economy. Any finding by the court as to those arguments would require not only re-weighing of facts in the record, but also weighing facts that are not yet in evidence. Any re-evaluation as to whether the plaintiff meets a listing or his RFC is dependent upon additional information from Dr. Born and possibly Dr. Kirschberg.

Finally, the plaintiff also submitted the notes and findings from an orthopedic examination of his right shoulder in May 2014. While the ALJ focused on the doctor's random comment that the plaintiff appeared to be in work clothes and was talking to his wife about lawn or garden work, she completely ignored the doctor's findings of a serious right-shoulder impingement. The doctor noted that the plaintiff was unable to lift his right arm and was "substituting" the use of the trapezius muscle to lift his arm. This, he predicted, "is probably going to get his neck aggravated as well." Certainly, limitations on the plaintiff's shoulder would only worsen the limitations on the use of his hands due to neuropathy, but no effort was made to gain more information about the interplay of his shoulder problems and the carpal tunnel syndrome and neuropathy in his hands and wrists.

---

and in "[c]oncentrating, persisting, or maintaining pace" due to his diabetes. If so, he would be regarded as disabled under Listing 11.14. This is a determination the Commissioner must weigh under Listing 11.14 on remand.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Cavin's arguments, the court finds that the Commissioner's decision is not supported by substantial evidence and, therefore, is due to be remanded for further proceedings. A separate order will be entered.

DONE this 30th day of March, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE